RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 8/2/13

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JIMMY JAMES MACK,<br>    Petitioner | CIVIL ACTION<br>SECTION "P"<br>NO. 1:12-CV-01998 |
| VERSUS | |
| WARDEN, LOUISIANA STATE<br>PENITENTIARY,<br>    Respondent | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

This matter was referred to the undersigned Magistrate Judge for report and recommendation in accordance with a standing order of this court.

### Statement of Claim

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by petitioner Jimmy James Mack ("Mack") on July 23, 2012 (Doc. 1) and amended on August 27, 2012 (Doc. 6). Mack is contesting his 2007 convictions by a jury in the Ninth Judicial District Court, Rapides Parish, Louisiana, on one count of attempted second degree murder and one count of armed robbery, for which he was sentenced to a total of 59 years imprisonment (Doc. 6). Mack is presently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana. Mack raises the following grounds for relief in his habeas petition:

    1. The trial judge's failure to inquire into Mack's demand to testify, after he unequivocally expressed his

desire to do so, violated his constitutional rights under the Fourth, Fifth, and Sixth Amendments.

2. Mack was denied due process and a fair trial due to Brady violations.

3. Mack had ineffective assistance of trial counsel for his failure to call two defense witnesses and failure to summon a medical personnel as a witness for the defense.

4. The trial judge erred in failing to grant a mistrial when evidence of other crimes was admitted.

The Respondent answered the petition (Doc. 21) and concedes that Mack has exhausted his state court remedies.

## Rule 8(a) Resolution

This court is able to resolve the merits of this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to

habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2). Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

## Facts

The facts of this case, as set forth by the Louisiana Third Circuit Court of Appeal at State v. Mack, 08-487 (La. App. 3d Cir. 11/5/08) 2008 wl 4801741, writ den., 2008-KO-2890 (La. 9/4/09) 17 So.3d 950, are as follows:

> "On the night of February 7, 2007, the victim, Curtis Dupuy, met the defendant, Jimmy James Mack, at the home of Timmy Sherman. Sherman knew both Dupuy and the defendant, but the latter two men had not met before that night. When Sherman realized his guests were smoking crack cocaine, he told them to leave. The pair left but then began driving around in the victim's truck, selling crack. The defendant told the victim he knew someone who would buy their remaining supply of crack. Dupuy parked his truck at a house designated by the defendant, and the

two men walked to the rear of the building.  When the defendant's knock went unanswered, the victim turned to leave.  At that point, the defendant produced a knife and stabbed the victim four times in the torso.  As Dupuy backed into an area with more light, the door of a nearby residence opened, and the defendant fled the scene.  The victim drove himself to an area hospital.  Medical testimony showed that his injuries included a lacerated liver."

## Law and Analysis

### Ground 1 - Right to Testify

Mack contends the trial judge's failure to inquire into Mack's demand to testify, after he unequivocally expressed his desire to do so, violated Mack's constitutional rights under the Fourth, Fifth, and Sixth Amendments.  Mack also contends his attorney erred in failing to allow him to testify.

The following colloquy took place at Mack's trial:

"Mr. Kutch: Mr. Mack, do you desire to testify?
"The Defendant, Jimmy James Mack: Yes.
"The Court: Mr. Kutch, next witness please?
"Mr. Kutch: Jimmy Mack.
"The Court: Mr. Mack, you need to come forward and be sworn, sir.
"Mr. Kutch: Mr. Mack has indicated that he is exercising his Fifth Amendment rights and we will rest."

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth, and Fourteenth Amendments.  <u>Rock v. Arkansas</u>, 483 U.S. 44, 107 S.Ct. 2704 (1987); <u>Jordan v. Hargett</u>, 34 F.3d 310, 312 (5th Cir. 1994). A defendant can only waive his right to testify if that waiver is knowing, intelligent and voluntary.  <u>Emery v. Johnson</u>, 139 F.3d 191, 198 (5th Cir. 1997).  A violation of this right occurs only if

the "'final decision that [the defendant] would not testify was made against his will.'" Emery, 139 F.3d at 198, quoting United States v. Teague, 908 F.2d 752, 759 (11th Cir.1990), reh'g granted, 953 F.2d 1525 (11th Cir.1992), cert. denied, 506 U.S. 842 (1992)).

Courts distinguish between interference with the right to testify by defense counsel, and interference by the court or prosecutor. A petitioner who argues that his attorney prevented him from testifying must satisfy the two prongs of Strickland, 466 U.S. 668, 104 S.Ct. 2052 (1984). Strickland requires that a defendant/petitioner show both that: (1) trial counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. U.S. v. Mullins, 315 F.3d 449 (5th Cir. 2002). A defendant is prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. The United States Fifth Circuit Court of Appeals has held that counsel's decision not to place a defendant on the stand is a strategy which seldom will support a challenge of ineffective assistance of counsel. Jones v. Cain, 227 F.3d 228, 231 (5th Cir. 2000). Federal courts have consistently recognized that such tactical decisions, when supported by the circumstances, are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir.1999), cert. denied, 528 U.S 1013, 120 S.Ct. 522 (1999).

5

In the case at bar, the trial transcript shows that Mack told the court he wanted to testify before his attorney informed the court that Mack had decided not to testify. Mack alleges his attorney lied to the court and did not allow him to testify in his own defense. However, Mack does not allege or offer any evidence to show what his testimony would have been, had he testified, and how it would have assisted his defense and changed the outcome of the trial. Therefore, Mack has not shown how he was prejudiced by not having testified at his trial and has not proven that he had ineffective assistance of counsel.

Mack also contends that the court interfered with his right to testify. Specifically, Mack contends that, since the trial judge was put on notice that he wanted to testify, the judge should have inquired further when Mack's attorney told the court that Mack had decided not to testify. However, a district court has no duty to verify that the defendant who is not testifying has waived the right voluntarily, and should not inquire as to the defendant's waiver of the right to testify. U.S. v. Leggett, 162 F.3d 237, 246 3d Cir. 1998), cert. den., 528 U.S., 120 S.Ct. 167 (1999), and cases cited therein. When Mack's attorney told the court that Mack had decided not to testify, Mack did not dispute his attorney's statement; Mack's silence indicated his assent to the judge. Therefore, the trial judge did not have any reason to know that Mack still wanted to testify, and did not have any reason to know

6

that Mack's attorney was "forcing" him to remain silent.

Since Mack has not shown that he was prejudiced, he has not shown that his counsel was ineffective. Also, since Mack has not shown that the trial judge had any reason to know Mack disagreed with his attorney's statement that Mack had decided not to testify, Mack has not shown the trial judge interfered with Mack's right to testify. Therefore, this ground for relief is meritless.

Ground 2 - Brady Violations

Next, Mack contends he was denied due process and a fair trial due to Brady violations. Mack contends that the prosecutor's file contained a favorable police report by an unknown officer which contradicted testimony by Officer Cedric Green and the victim, Curtis Dupuy. Mack also contends the prosecutor knowingly allowed Officer Green and Dupuy to present perjured testimony which was contradicted by the withheld police report.

The Due Process Clause of the Fourteenth Amendment forbids the State from knowingly using perjured testimony. Beltran v. Cockrell, 294 F.3d 730, 736 (5th Cir. 2002), and cases cited therein. In order for an allegation of perjured testimony to constitute a due process violation, a petitioner must show that the prosecution knowingly presented materially false evidence to the jury. Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990), citing, United States v. Martinez-Mercado, 888 F.2d 1484, 1492 (5th Cir. 1989). The touchstone of due process analysis in cases of alleged

prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension. Prosecutorial misbehavior, alone, does not constitute a wrong of constitutional dimension and does not require a new trial. <u>Smith v. Phillips</u>, 455 U.S. 209, 102 S.Ct. 940 (1982). Even in cases of egregious prosecutorial misconduct, such as the knowing use of perjured testimony, a new trial is required only when the tainted evidence was material to the case. The materiality requirement implicitly recognizes that the misconduct's effect on the trial, not the blameworthiness of the prosecutor, is the crucial inquiry for due process purposes. <u>Smith</u>, 455 U.S. at 220 n.10, 102 S.Ct. at 947 n.10.

In <u>Brady v. Maryland</u>, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97 (1963), the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. <u>Wilson v. Whitley</u>, 28 F.3d 433, 434 (5th Cir. 1994), cert. den., 513 U.S. 1091, 115 S.Ct. 754 (1995), citing <u>U.S. v. Bagley</u>, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383 (1985). In order to establish that evidence falls within the purview of <u>Brady</u>, a petitioner must establish that the evidence was (1) suppressed, (2)

favorable, and (3) material. <u>Williams v. Whitley</u>, 940 F.2d 132, 133 (5th Cir. 1991). Information contained in police reports may be <u>Brady</u> material. Moreover, the prosecution is deemed to have knowledge of information available to it and the failure to provide that information when requested is a violation of the <u>Brady</u> rule. <u>Williams</u>, 940 F.2d at 133.

First, Mack contends the defense was not provided with a police report by an unknown officer (apparently Officer Fruge) prior to trial. However, the fact that Mack received the report after trial (apparently it was in his attorney's file) indicates the defense had the report prior to trial. The Respondent contends in its brief that the defendant was provided with the State's entire file prior to trial (Doc. 21), and that event is reflected in the trial court's minutes for June 15, 2007 (Doc. 21, Ex. p. 1). Thus, it does not appear that the State withheld the police report from the defendant.

In any event, Officer Fruge's report does not appear to be favorable to Mack. The police report referred to by Mack shows that it was written by Officer Fruge,[1] who stated that, when the victim, Dupuy, was on his way to be x-rayed, Dupuy told the officers (Fruge and Green) that he gave an unknown black male a ride home from a party, he pulled up at an unknown address, the

---

[1] Officer Parker was listed in the report as the supervising officer.

unknown male invited him inside the house, but when Dupuy was getting out of his car the male proceeded to his side of the car and began stabbing Dupuy (Doc. 1, Ex. pp. 9-10). Officer Fruge noted at the end of his brief report that he and Officer Green had only been able to speak with the Dupuy briefly before he was taken away for x-rays (Doc. 1, Ex. pp. 10).

The report by Officer Green, the investigating officer, was more thorough and reported a statement by Dupuy's girl friend, the facts that Dupuy and Sherman both picked Mack out of a lineup, and statements by Sherman and Marquita Taylor (Sherman's girlfriend and Mack's niece) (Doc. 1, Ex. p. 11). Officer Green's report showed that Dupuy told him he was asked to give a black male a ride home from Sherman's house, the black male invited Dupuy into the house, but when they got to the back of the house, the black male asked for Dupuy's money and, when Dupuy refused, the male started hitting Dupuy in the stomach (Doc. 1, Ex. p. 11). Dupuy ran, got into his car and drove to the hospital; Dupuy stated he did not realize he had been stabbed until he saw blood on his shirt (Doc. 1, Ex. p. 11). Dupuy testified that he and Mack smoked crack at Sherman's house, then he and Mack purchased some crack and rode around in Dupuy's truck and sold it, then went to a house where Mack said he knew someone who would buy the rest of the crack, but when they knocked they discovered the person was not home; it was outside that house that Mack stabbed Dupuy and stole the money from him

10

(Doc. 21-4, Ex. pp. 86/200-90/200).

Mack contends Officer Fruge's report contradicts Dupuy's and Green's testimony, apparently arguing that he was not the black male who rode with and stabbed Dupuy. Mack states in his brief that "[t]he only well-established fact is both petitioner and victim left the Sherman's resident [sic] at the same time." Mack also admits in his brief that he and Dupuy smoked crack at the Sherman's residence, and he gave Dupuy his phone number so they could get together some time. Mack argues he would not have needed a ride home since he lived 300 hundred yards from the Sherman's house.

There is a discrepancy between Dupuy's and Green's testimony and Fruge's report, where Officer Fruge's report indicates the unknown black male stabbed Dupuy next to Dupuy's car, rather than close to the house. However, that discrepancy does not tend to show that Mack did not stab and rob Dupuy. Mack also points to Dupuy's testimony that he was at the Sherman's home to return some uniforms, while Fruge's report showed he was there for a party. Regardless of why Dupuy was at the Sherman's home, the fact remains that Dupuy and Mack smoked cocaine together at the Sherman's home and then left together. Therefore, that discrepancy also does not tend to show that Mack did not stab and rob Dupuy. Therefore, there is no material discrepancy between Officer Green's testimony, Dupuy's testimony, and Officer Fruge's police report which

11

indicates that Green and Dupuy testified falsely at trial. Since Mack has not shown that Green and Dupuy gave false testimony, he has not shown the prosecutor knowingly used perjured testimony.

As for Mack's contention that he is not the black male that rode with and stabbed Dupuy, according to Officer Green's report and testimony (Doc. 21-4, pp. 57/200-80/200), Mack was identified by Sherman, Dupuy, and Marquita Taylor as the black male who was given a ride home by Dupuy, and both Dupuy and Sherman picked Mack out of a lineup. Moreover, according to Dupuy's testimony, he did not give Mack a ride home, but instead they drove around and sold crack.

Since Mack has not shown that Officer Fruge's report was favorable to him, or that the prosecutor knowingly presented false testimony, ths ground for relief is meritless.

Ground 3 - Ineffective Assistance of Counsel

Mack contends he had ineffective assistance of trial counsel due to his counsel's failure to call two defense witnesses and a medical expert to testify.

To prevail on a habeas complaint of ineffective assistance of counsel a complainant must demonstrate that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. A defendant is prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different.

12

To make that determination the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict, and evaluating the alleged failings of counsel in that total setting. The court does not assess any alleged error in isolation. In an examination of state proceedings under 28 U.S.C. § 2254 the court will not reject an adjudication on the merits unless the action by the state court is found to be contrary to, or an unreasonable application of, clearly established federal law, or the state court's determination of the facts is manifestly unreasonable in light of the evidence. Jones v. Cain, 227 F.3d 228 (5th Cir. 2000), and cases cited therein. Also, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984).

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. Dowthitt v. Johnson, 230 F.3d 733 (5th Cir. 2000), cert. den., 532 U.S. 915, 121 S.Ct. 1250 (2001), citing Strickland v. Washington, supra. Thus, the court's scrutiny of counsel's performance is highly deferential. Dowthitt, citing Kitchens v. Johnson, 190 F.3d 698, 703 (5th Cir.1999). In a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof. U.S. v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999), citing Clark v. Collins, 19 F.3d 959, 964 (5th Cir.), cert. den., 513 U.S. 966, 115 S.Ct. 432 (1994).

Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative. Graves v. Cockrell, 351 F.3d 143, 155 (5th Cir. 2003), amended in other part, 351 F.3d 156 (5th Cir. 2003), cert. den., 124 S.Ct. 2160 (U.S. 2004), citing Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978). Also, Boyd v. Estelle, 661 F.2d 388, 390 (5th Cir. 1981). Where the only evidence of a missing witnesses' testimony is from the defendant, the Court views claims of ineffective assistance with great caution. Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001), citing Lockhart v. McCotter, 782 F.2d 1275, 1282 (5th Cir.1986), cert. den., 479 U.S. 1030, 107 S.Ct. 873 (1987). Unless a petitioner provides the court with affidavits (or similar matter) from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice. Sayre, 238 F.3d at 636.

Mack provided an affidavit by Tom Williams (Doc. 1, Ex.), who stated he told Mack's attorney that he could testify that he picked Mack up for work between 5:00 and 5:30 a.m. on February 8, 2007 and was with him until Williams dropped Mack off after work, and that he was never called to testify by Mack's attorney. Mack contends that Williams provides him with an "alibi" against Dupuy's testimony that he thought he saw Mack outside his hospital room one

14

day. Since Dupuy was in the hospital for five days and did not state what day he thought he saw Mack, it is not established that Williams' testimony would have shown Mack was not at the hospital. Moreover, Dupuy also testified that his mother ran after the person but was unable to catch up with him, so it was not established that Mack was actually there. In any event, whether Mack was at the hospital on February 8, 2007 or not is irrelevant to whether he stabbed and robbed Dupuy. Therefore, Williams' testimony would not have provided Mack with an alibi for the offenses with which Mack was charged, the attempted murder and robbery which occurred on February 7, 2007. Therefore, Mack has not shown his attorney was ineffective for failing to call Williams as a defense witness.

Another witness was subpoenaed for Mack, Shillem Mack, but was not called (Doc. 1-3, p. 15/47). However, Mack has not alleged or shown what that witness would have testified to and how it would have affected the outcome of his trial. Therefore, Mack has not shown his attorney was ineffective for failing to call Shillem Mack as a defense witness.

Mack also contends his attorney should have called a medical expert as a defense witness to testify as to the effects of crack cocaine, alcohol and benzodiazepines on a person, all of which he contends were found in Dupuy's system at the hospital.[2] While such

---

[2] The lab report (Doc. 1, Ex.) showed Dupuy had cocaine and "benz," in his system, but did not indicate the presence of alcohol.

15

testimony might have affected Dupuy's credibility, there was other evidence which supported Dupuy's identification of Mack as his assailant. Mack was picked out of a lineup by both Dupuy and Sherman, and Mack's niece (Sherman's girl friend) told Officer Green that Mack left the Sherman's house with Dupuy on February 7, 2007. Officer Green's testimony supported Dupuy's testimony that Mack was the person who robbed and stabbed him. Therefore, Mack has not shown that his attorney's failure to call a medical expert, to testify as to the effects of drugs on Dupuy, affected the outcome of the trial, and has not shown his attorney was ineffective for failing to call a medical expert as a witness.

Since Mack has not shown his attorney was ineffective for not calling Williams and a medical expert as witnesses, this ground for relief is also meritless.

Ground 4 - Other Crimes Evidence

Finally, Mack argues the trial judge erred in failing to grant a mistrial when evidence of other crimes was admitted. Mack contends the admission of Dupuy's testimony, that he and Mack bought and sold cocaine, constitutes other crimes evidence for which Mack was not provided a Prieur notice and which deprived Mack of a fair trial.

Mere violation of evidentiary rules by the state trial court does not in itself invoke habeas corpus relief. Panzavecchia v. Wainwright, 658 F.2d 337, 340 (5th Cir. 1981). Thus, claims

16

challenging the exclusion or inclusion of evidence based on state law do not afford a basis for federal habeas corpus relief. Federal habeas corpus review is limited to errors of constitutional dimension, and federal courts do not sit to review the mere admissibility of evidence under state law. In reviewing state court evidentiary rulings, the federal habeas court's role is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness under the Due Process Clause. Castillo v. Johnson, 141 F.3d 218, 222 (5th Cir.), cert. denied 524 U.S. 979, 119 S.Ct. 28 (1998), and cases cited therein.

The admission of improper evidence in a state criminal trial will constitute grounds for habeas relief if fundamental fairness was prevented thereby. What elevates the mistake to a constitutional plane is at least two-fold. First, the mistake must be material in the sense of a crucial, critical, highly significant factor. Second, it must have some state complicity in it. Shaw v. Estelle, 686 F.2d 273, 275 (5th Cir. 1982), cert. den., 459 U.S. 1215, 103 S.Ct. 1215 (1983), and cases cited therein. Also, Hills v. Henderson, 529 F.2d 397 (5th Cir. 1976), cert. den., 429 U.S. 850, 97 S.Ct. 139 (1976). Louisiana law generally prohibits the admission of "other crimes evidence," that is, evidence of criminal conduct uncharged in the subject indictment, with exceptions for proving identity, system or res gestae. Robinson v. Whitley, 2

F.3d 562, 566 (5th Cir. 1993), cert. den, 510 U.S. 1167, 114 S.Ct. 1197 (1994), citing State v. Prieur, 277 So.2d 126, 128 (La. 1973).

In Louisiana, evidence of other crimes may be admitted when it forms part of the res gestae of the charged offense. Robinson, 2 F.3d at 566. To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous action. In such cases the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. Evidence which does not form part of the res gestae, but which merely depicts the defendant as a bad man, may constitute a due process violation if it renders the trial fundamentally unfair. See Robinson, 2 F.3d at 567. No Prieur notice is necessary when the other crimes evidence sought to be introduced forms an integral part of the crime charged. State v. Broussard, 95-792 (La. App. 3d Cir. 12/6/95), 664 So.2d 835, 838.

In the case at bar, Dupuy testified that he and Mack smoked crack together at the Sherman's house, then left in Dupuy's truck, bought cocaine, rode around selling the cocaine, then went to a house where Mack said someone would buy the rest of their cocaine; while they stood outside that house, Mack stole the (cocaine) money from Dupuy and stabbed him. Clearly, Dupuy's testimony as to

buying and selling cocaine formed part of the res gestae of the offense; it explained why Dupuy and Mack were together, why they were at the house where Mack robbed and stabbed Dupuy, and why Dupuy had money that Mack wanted to steal from him.

Since the evidence that Mack and Dupuy bought and sold cocaine formed part of the res gestae of the attempted murder offense with which Mack was charged, the evidence was admissible and the State was not required to provide a <u>Prieur</u> notice to Mack of its intent to introduce that evidence.

Since Mack was not denied due process and a fundamentally fair trial by the admission of the other crimes evidence, this ground for relief is meritless.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that Mack's habeas petition be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this**

Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in Alexandria, Louisiana on the 2nd day of August ~~July~~ 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

20